IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ADAM LESTER PRESTON, | § |
| | § |
| Petitioner, | § CIVIL ACTION NO. 4:22-CV-00990-CAN |
| | § |
| v. | § |
| | § |
| CAMILLE RENEE PRESTON, | § |
| | § |
| Respondent. | § |

**MEMORANDUM OPINION AND ORDER**

On November 22, 2022, Petitioner Adam Lester Preston ("Petitioner") filed a Verified Petition for Return of Child ("Verified Petition") [Dkt. 1] seeking the return of his nine-year-old daughter, G.I.P., a minor (hereinafter, G.I.P. or the "minor child") to Canada. On November 30, 2022, the Court issued a Show Cause Order [Dkt. 6], directing Respondent Camille Renee Preston ("Respondent") to appear in-person before the Court on December 8, 2022, for an initial show cause and scheduling hearing to confirm the minor child is physically located within the jurisdiction of this Court and to determine a briefing schedule and set an expedited trial on the merits of the Verified Petition [Dkt. 6 at 1-2]. On December 6, 2022, Petitioner filed proof of service of the Verified Petition and Show Cause Order on Respondent [Dkts. 7; 8; 9]. On December 8, 2022, the Parties executed formal consents to the disposition of this case by the United States Magistrate Judge, and this case was referred to the undersigned for all further proceedings and entry of judgment [Dkts. 10, 11]. On December 8, 2022, the Court held the initial show cause and scheduling hearing, following which, upon agreement of the Parties and in consideration of the expedited nature of these proceedings, the Court set this matter for a bench trial on Friday, January 6, 2023. The Court further appointed a guardian *ad litem* for the minor

child [Dkt. 16]. On December 13, 2022, Respondent filed her Answer, raising two affirmative defenses provided by the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), specifically the grave risk and mature child defenses [Dkt. 18]. On December 29, 2022, Petitioner filed his trial brief in support of his Verified Petition [Dkt. 27], and Respondent filed her trial brief in support of her defenses [Dkt. 24]. Both Parties later supplemented their briefing [Dkts. 37; 38]. On January 4, 2023, Respondent filed an unopposed motion for *in camera* interview with the minor child [Dkt. 41]. On January 5, 2023, the Court granted this request and conducted the pretrial conference [Dkt. 46]. On January 6, 2023, the Court conducted a show cause hearing and bench trial on the merits of the Verified Petition [Dkt. 50]. During the hearing, the Court received evidence and heard testimony from Petitioner, Respondent, the *ad litem*, and Respondent's mother, Ms. Lucine Camille Hinze. Upon agreement of the Parties, the Court also interviewed the minor child *in camera* with the *ad litem*, court reporter, and Court staff present [Dkts. 53; 57]. Both Petitioner and Respondent had full opportunity to present arguments, testimony, and/or evidence in support of their respective positions. At the conclusion of the hearing, the Court orally announced its ruling, finding that Petitioner's Verified Petition [Dkt. 1] was **GRANTED** and advising that a written decision would be forthcoming.

**FINDINGS OF FACT**

*Undisputed and Stipulated Facts*

Petitioner is the biological father of the minor child, G.I.P. Respondent is the minor child's biological mother. Petitioner and Respondent are currently legally married and were married at the time of the minor child's birth [Dkt. 1 at 2]. The Parties resided together with the minor child in their marital home in Brandon, Manitoba, Canada, from around the time she was born through the date that Respondent and the minor child traveled to the United States. On July 19, 2022,

Respondent and the minor child traveled from Canada to the United States, specifically Frisco, Texas, in the Eastern District of Texas, to visit extended family, with the expectation that both the minor child and Respondent would return to Canada on September 7, 2022. Respondent and the minor child did not return to Canada on that date or any date thereafter. No Party disputes these facts, and, in fact, to narrow the issues presented at trial, the Parties reached certain Agreed Stipulations:

1. The parties stipulate that the child G.I.P. was born in Brandon, Manitoba, Canada on August 4, 2013, and is a Canadian citizen.

2. The parties stipulate that the child G.I.P. resided in Brandon, Manitoba, Canada with both of her parents, who are currently married and have been married since June 12, 2010.

3. The parties stipulate that Canada is the habitual residence of the child under the Hague Convention on International Child Abduction.

4. The parties stipulate that both Canada and the United States of America are signatories to the Hague Convention on International Child Abduction.

5. The parties stipulate that Adam Lester Preston has rights of custody of the child under Canadian law and that Adam Lester Preston was exercising those rights of custody at the time G.I.P. was "wrongfully removed or retained," as the term is set forth in the Convention as an element of the prima facie case of return, in the United States of America.

6. The parties stipulate that Camille Preston and the child traveled to Texas from Canada to visit family on July 19, 2022 with the consent of Adam Lester Preston and they were to return to Canada on September 7, 2022.

7. The parties stipulate that the child G.I.P. was "wrongfully retained" in the United States of America, as the term is set forth in the Convention as an element of the prima facie case of return, when the child did not return to Canada on September 7, 2022.

8. The parties stipulate that the defendant is not pursuing their Article 13(b) Grave Risk Defense. The only defense being pursued is the Mature Child Objection Defense under Article 13.

[Dkt. 53, Joint Exhibit A at 1]. In light of the stipulations reached by the Parties, the only issue presented for determination at trial was the applicability of the mature child defense. Against this

backdrop, the Court now turns to its analysis under the Hague Convention, and the International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et. seq.* ("ICARA").

## CONCLUSIONS OF LAW

*General Principles*

Petitioner brought this action for the return of G.I.P. under the provisions set forth in the Hague Convention and ICARA, which entitle a person whose child has been wrongfully removed to, or wrongfully retained in, the United States, to petition a federal court to order the child returned. More specifically, the Hague Convention governs civil proceedings filed in signatory countries for the recovery of abducted children. Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 1343 U.N.T.S. 89. The United States and Canada are both signatories to the Convention.[1] ICARA is the implementing legislation for the Convention. 22 U.S.C. §§ 9001–11; *Abbott v. Abbott*, 560 U.S. 1, 9 (2010). The Hague Convention and ICARA empower federal courts in the United States to order the return of children removed or retained in violation of the Hague Convention. *See* 22 U.S.C. § 9001(b)(4); *Abbott*, 560 U.S. at 9. Importantly, neither the Hague Convention nor ICARA authorize courts to determine the merits of the underlying custody dispute. *See Smith v. Smith*, 976 F.3d 558, 561-62 (5th Cir. 2020). Instead, "[t]he return remedy 'was designed to restore the pre-abduction status quo.'" *Soto v. Garcia*, No. 3:22-CV-0118-B, 2022 WL 780701, at *6 (N.D. Tex. Mar. 15, 2022) (quoting *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 344 (5th Cir. 2004)) (cleaned up). "The Hague Convention reasons that the best interest of the child is well served when decisions regarding custody rights are made in the country of habitual residence." *Esparza v. Nares*, No. 4:22-CV-03889, 2022 WL 17724414, at *2 (S.D. Tex. Dec. 15, 2022). Thus, here, "our inquiry is

---

[1] *Status Table*, Convention of 25 October 1980 on the Civil Aspects of International Child Abduction, https://www.hcch.net/en/instruments/conventions/status-table/?cid=24 (last visited Jan. 10, 2023).

limited to determining whether or not the child has been wrongfully removed from their country of 'habitual residence.'" *Delgado v. Osuna*, 837 F.3d 571, 577 (5th Cir. 2016).

In a case falling under the Hague Convention, the petitioner bears the initial burden. A petitioner must establish, by a preponderance of the evidence,[2] that the child has been wrongfully removed or retained within the meaning of the Hague Convention. *Id.* To show wrongful removal or retention, a petitioner must prove three elements:

> (1) that the respondent removed or retained the child somewhere other than the child's habitual residence; (2) the removal or retention was in breach of the petitioner's rights of custody under the laws of the country of habitual residence; and (3) the petitioner was exercising those custody rights at the time of removal or retention or would have exercised those rights but for the removal or retention.

*Id.* As outlined *supra*, the Parties stipulate to those facts necessary to establish Petitioner's *prima facie* case, and Respondent concedes Petitioner has met such burden. The Court, therefore, finds that Petitioner has proven by a preponderance of the evidence that Respondent wrongfully removed G.I.P. from Canada, the child's habitual residence.

"Even if a petitioner establishes the foregoing, a court may still deny a petition if the respondent proves one of several narrow affirmative defenses to wrongful removal or retention." *Id.*; *Soto v. Contreras*, 880 F.3d 706, 710 (5th Cir. 2018) (citing Hague Convention, arts. 12, 13, 20). Respondent persists in raising a single affirmative defense in this cause, the "age and maturity" or "mature child" defense, which permits a court to refuse to order the return of the child if it finds that the child has attained an age and degree of maturity at which it is appropriate to take

---

[2] "[T]o prove a fact or claim by a preponderance of the evidence, a party must prove that it is more likely than not that his or her version of the facts is true." *Ostos v. Vega*, No. 3:14-CV-3935-L, 2015 WL 3622693, at *15 n.9 (N.D. Tex. June 10, 2015) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387-88 (1983)).

account of its views and the child objects to being returned.[3] Unless this affirmative defense applies, the minor child, G.I.P., must be returned to Canada.

*Mature Child Defense*

As noted *supra*, under the Hague Convention, a court may "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention, art. 13. Analysis of the mature child defense is therefore a two-step process: first, the Court must determine whether G.I.P. is of sufficient age and maturity for her views to be considered, and second, the Court must evaluate the nature of the objection and determine whether it is a particularized objection or merely a general preference. Respondent must prove *each element* of the mature child defense by a preponderance of the evidence—that the child is mature enough for her views to be taken into account *and* that the child objects to return. *See* 22 U.S.C. § 9003(e)(2)(B); *Quintero v. De Loera Barba*, No. CV 5:19-148, 2019 WL 1386556, at *5 (W.D. Tex. Mar. 27, 2019) (citing *Rodriguez v. Yanez*, 817 F.3d 466, 474 (5th Cir. 2016)); *Zaoral v. Meza*, No. CV H-20-1700, 2020 WL 5036521, at *14 (S.D. Tex. Aug. 26, 2020) ("The mature child exception therefore has two elements"); *Soonhee Kim v. Ferdinand*, 287 F. Supp. 3d 607, 625 (E.D. La. 2018) (citing *Rodriguez*, 817 F.3d at 473-74) ("To satisfy this burden, the Father must 'establish two distinct facts' with respect to each child."). As with each affirmative defense under the Hague Convention, the "exception is to be applied narrowly." *England v. England*, 234 F.3d 268, 272 (5th Cir. 2000). Moreover, when the mature child defense is the only affirmative defense raised, as is the case here, the Court "must apply a stricter standard in considering a child's wishes when those wishes are the

---

[3] Importantly, the language of this defense is permissive. Hague Convention; Text and Legal Analysis, 51 Fed. Reg. 10494-01, 10509 (allowing the court discretion to disregard a child's objection, even if his or her age and level of maturity supports consideration of the objection).

MEMORANDUM OPINION AND ORDER – Page 6

sole reason underlying a repatriation decision and not part of some broader analysis,' such as whether the child would suffer a grave risk of harm if returned to his or her habitual residence." *San Martin v. Moquillaza*, No. 4:14-CV-446, 2014 WL 3924646, at *7 (E.D. Tex. Aug. 8, 2014) (quoting *Tsai–Yi Yang v. Fu–Chiang Tsui*, 499 F.3d 259, 278 (3d Cir. 2007)).

### *Is the Child Mature Enough?*

"'[W]hether a child is of sufficient age and maturity is a fact-intensive process,' and the Fifth Circuit has 'declined to hold, as a matter of law, that any particular age is sufficient of insufficient to meet the defense.'" *Esparza*, 2022 WL 17724414, at *3 (quoting *Dietz v. Dietz*, 349 F. App'x 930, 934 (5th Cir. 2009)). "No age is too young or old enough as a matter of law for the exception to apply but must be determined on a case-by-case basis." *San Martin*, 2014 WL 3924646, at *7 (citing *England*, 234 F.3d at 272). "In making its determination, a court must rely on live, oral testimony as well as the demeanor of the witness." *Esparza*, 2022 WL 17724414, at *3 (citing *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005)). The Fifth Circuit has explained that an *in camera* interview with the child provides a proper basis for the Court's consideration of the age and maturity defense. *Vasconcelos v. Batista*, 512 F. App'x 403, 406 & n.6 (5th Cir. 2013) (citing TEX. FAM. CODE § 153.009) ("Such interviews are otherwise entirely proper under Texas law."). In keeping with the Fifth Circuit's guidance, the Court has considered the *in camera* interview with the minor child [Dkt. 57, Sealed], as well as the Petitioner's and Respondent's testimony at trial related to the minor child's maturity.[4] The Court did also consider

---

[4] At trial, the Court was required to make certain findings regarding the demeanor and substantive testimony of the witnesses, and perhaps most importantly of the minor child. *See Sealed Appellant*, 394 F.3d at 343 (explaining the district court must make certain factual and credibility determinations in its decision, which will not be disturbed on appeal unless "a review of the evidence leaves us with 'the definite and firm conviction that a mistake has been made'"). Broadly speaking however, much of the testimony at trial by Petitioner, Respondent, the *ad litem*, and Respondent's witness, Mrs. Hinze, relate to whether the minor child's return to Canada is in the best interests of the child. Because these are custody considerations as to the child's bests interests, this Court does not find this testimony appropriate to consider regarding the Respondent's affirmative defense. The Court has considered the trial testimony

the report of the *ad litem* [Dkt. 44, Sealed] and her testimony, and the documentary evidence in the record. The Court finds Respondent has not carried her burden of proof regarding the first element of the mature child defense. Following the interview of the minor child, the Court concludes that it would not be appropriate to consider G.I.P.'s views in determining whether she should be returned to Canada, as G.I.P. has not yet attained a sufficient age and degree of maturity. G.I.P. is nine years old and is homeschooled. She stated her grade level varies, somewhere between third, fourth, and fifth, depending on the subject. Reading and math are her favorite subjects, and she enjoys art and baking. During the interview, the minor child was talkative but understandably nervous and confused by the circumstances producing this litigation. On several occasions, she lost her train of thought and asked the Court to repeat its question. While she voiced a clear opinion on certain topics, and both parents and the *ad litem* agree she is bright and intelligent, her demeanor, mannerisms, and interests suggest she is of average maturity for a 9-year-old. That her testimony reflects the interests and concerns of a perfectly normal child of her age is intended as no discredit to her; the mature child exception is reserved for *extraordinary* cases. *See Friedrich v. Friedrich*, 983 F.2d 1396, 1403 (6th Cir. 1993) (noting that affirmative defenses are reserved for "extraordinary cases," since "it is the clear import of the Convention that in most cases the duty of that court, when the niceties of the convention are met, is to return the child to the country of habitual residence for resolution of the custody dispute under the laws of that country."); *Guzzo v. Hansen*, No. 4:22-CV-15 PLC, 2022 WL 3081159, at *9 (E.D. Mo. Aug. 3, 2022) ("Child is intelligent and personable, but the record does not suggest that his opinions are those of an especially mature person. To the contrary, Child generally exhibits the

---

relevant to the mature child defense, including the allegations by each of Petitioner and Respondent that the other parent has unduly influenced the child's wishes. The Court weighed such testimony and analyzed credibility in such instances.

traits of a typical ten-year-old."); *Bhattacharjee v. Craig*, No. 4:21-CV-00826-SEP, 2021 WL 4504376, at *5 (E.D. Mo. Oct. 1, 2021) ("Based on the evidence presented, this is not an extraordinary case, and Respondent has not satisfied that stricter standard."). Based on the totality of evidence, the Court finds Respondent has not carried her burden to show by a preponderance of the evidence that G.I.P. has attained the age and maturity such that her views should be taken into account. *See Esparza*, 2022 WL 17724414, at *4 ("In so holding, this Court is not only considering their answers, but also their demeanor, their attention to what was being asked, and the manner of their responses. The totality of the evidence made it clear that neither girl demonstrated the age and maturity necessary for the Court to take their views into account."); *Zaoral*, 2020 WL 5036521, at *14 ("the court concludes after considering her demeanor in court and the basis for her objection, that Respondent has failed to establish by a preponderance of the evidence that E.R.G. is sufficiently mature for the court to afford weight to her preference to remain in the United States."); *see also Dietz*, 349 F. App'x at 934-35 (upholding finding that nine year old and thirteen year old were not mature enough based on observation of their testimony during the trial); *San Martin*, 2014 WL 3924646, at *7 (finding nine-year old and twelve-year old not mature after *in camera* interview with both children).

### *Does the Child Object to Return?*

Even if the Court had found the child displayed sufficient age and maturity, the Court further finds that any objection by the minor child to returning to Canada should not be considered and is the result of undue influence. *See Vazquez v. Vasquez*, No. 3:13-CV-1445-B, 2013 WL 7045041, at *29 (N.D. Tex. Aug. 27, 2013) ("Even if the Court concluded that M.V. was of an age and maturity to give a statement regarding her objection or not to returning to Mexico, which the Court does not so conclude, there is sufficient evidence demonstrating that M.V.'s knowledge and

perception of Mexico has been unduly influenced by Respondent."). "A child's objection to being returned may be accorded little if any weight if the court believes that the child's preference is the product of the abductor parent's undue influence over the child." Hague Convention; Text and Legal Analysis, 51 Fed. Reg. 10494-01, 10510. Indeed, in the Fifth Circuit, the "child's objection should be ignored if the court believes the abducting parent has exercised 'undue influence over the child.'" *Rodriguez*, 817 F.3d at 476 (citing *Tsai–Yi Yang*, 499 F.3d at 279 (adopting State Department's "undue influence" rule); *de Silva v. Pitts*, 481 F.3d 1279, 1286 (10th Cir. 2007) (same)). This is consistent with the Hague Convention's "primary aims []to 'restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court.'" *England*, 234 F.3d at 271 (quoting *Friedrich*, 78 F.3d at 1063). To that end, courts consider the nature of the child's objection to determine whether undue influence is present, asking whether the objection "does not seem to be based on the child's personal knowledge" and looking to "the behavior of the custodial parent."[5] *Colon v. Mejia Montufar*, 470 F. Supp. 3d 1280, 1298 (S.D. Fla. 2020); *see also Alvarez Romero v. Bahamonde*, No. 1:20-CV-104 (LAG), 2020 WL 8459278, at *17 (M.D. Ga. Nov. 19, 2020) ("When determining whether the child's objection is the result of undue influence, district courts consider whether the objection is derived from the child's own independent thought, whether the child displayed honesty and fairness when

---

[5] Although the Fifth Circuit has not addressed the undue influence factors a court should consider, other courts have identified certain factors that are instructive here. At least one court in the Eastern District discussed such factors in its analysis:

> [T]he district court there found that the child specifically expressed that she did not want to visit her father while he was in the United States, demonstrated an understanding of the proceedings and of her right to state her preferences, and stated a desire to remain in the United States with her mother and stepfather. Here, the Court finds that neither of the children understood the proceedings and their right to state their preferences, and did not unequivocally express a desire to remain in the United States for any reason other than generalized affinity for this country after having lived here for the last year. Thus, the Court finds that Respondent failed to meet his burden to establish that one or more of the affirmative defenses apply to prevent the return of the children in this case.

*San Martin*, 2014 WL 3924646, at *7 (citation omitted) (citing *Vasconcelos*, 512 F. App'x at 403). The Fifth Circuit has also favorably cited *Tsai–Yi Yang* and *Haimdas*. *See Rodriguez*, 817 F.3d at 477 n.39.

describing her parents, whether the objection is based on the child's personal experiences, and whether the child provides specific reasons underlying her objections."), *aff'd*, 857 F. App'x 576 (11th Cir. 2021). "Undue influence may not be intentional, but simply the inevitable product of an ongoing custody battle between two parents." *Hirst v. Tiberghien*, 947 F. Supp. 2d 578, 598 (D.S.C. 2013).

The sealed testimony of G.I.P. makes abundantly clear that her views have been unduly influenced by the adults in her life, specifically that she has been influenced regarding the circumstances underlying or resulting in any objection to return, her understanding of these proceedings, and her preference to live with Respondent. Indeed, one indication of undue influence is whether the child's views have changed over time. Failing to consider when the child began to object to return, particularly after the filing of a petition under the Hague Convention, "would encourage parents to wrongfully retain a child for as long as possible," since "wrongful retention could enable the child to become comfortable in his or her new surroundings, which may create a desire to remain in his or her new home." *Tsai–Yi Yang*, 499 F.3d at 280. G.I.P. unequivocally stated that when she left for her trip to Texas, she wished to return to Canada. This desire to return to Canada persisted at the time Respondent informed G.I.P. they would remain in Texas and, based upon the minor child's testimony, only later changed after she learned of this lawsuit and developed a perception of the same tainted by the Parties. *See Quintero*, 2019 WL 1386556, at *6 n.3; *see also Guzzo*, 2022 WL 3081159, at *10. The minor child indicated during the *in camera* interview that both parents had discussed this litigation with her, which is consistent with the trial testimony of Petitioner, Respondent, and the *ad litem*. The child further stated she had been given documents from these proceedings from one or both parents and provided an explanation of their meaning. *See Ostos v. Vega*, No. 3:14-CV-3935-L, 2015 WL 3622693, at *25

(N.D. Tex. June 10, 2015) (finding the child's responses during the *in camera* interview suggested discussions with family members about the case had influenced the child's views); *Morrison v. Dietz*, No. CIV.A. 07-1398, 2008 WL 4280030, at *14 (W.D. La. Sept. 17, 2008) (finding undue influence based on statements that the child had discussed the trial with family and had seen documents related to the case); *Chambers v. Russell*, No. 1:20CV498, 2020 WL 5044036, at *11 (M.D.N.C. Aug. 26, 2020) (finding the minor child's testimony was unduly influenced by the parents' discussion of the lawsuit and by and through the provision of court documents from the case to the child). Declining to return the child to Canada under the present circumstances is not appropriate considering the goals of the Hague Convention.

To be clear, the Court finds any "objection" by G.I.P. to returning to Canada is not based on her personal observations or experiences, and her preference has been unduly influenced by the separation of her parents, the pressure one or more has applied to her, and her misunderstanding of these proceedings and what will happen to her if she is returned to Canada. *See Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 208 (E.D.N.Y.) ("[as] A.H. has been the subject of an international tug-of-war since age four, his *in camera* testimony revealed that he harbors conflicting emotions about his family that deeply affect his world-view."), *aff'd*, 401 F. App'x 567 (2d Cir. 2010); *see also Hirst*, 947 F. Supp. 2d at 599 ("it is clear to this court that the children have been influenced by their parents' bitter and contentious relationship."); *Morrison*, 2008 WL 4280030, at *14 (finding the child's testimony showed undue influence by a parent); *Tsai–Yi Yang v. Fu-Chiang Tsui*, No. 2:03-CV-1613, 2006 WL 2466095, at *15 (W.D. Pa. Aug. 25, 2006) ("the Court must be satisfied . . . [that] her objections are grounded in her own mature opinion and are not merely the conduit for the opinions of others. . . . Tsui has failed to prove either fact by a preponderance of the evidence."). The Court finds Respondent has not proven either element of her affirmative

defense by a preponderance of the evidence. The minor child, G.I.P., must therefore be returned to Canada.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Petitioner Adam Lester Preston's Verified Petition for Return of Child to Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent [Dkt. 1] is **GRANTED**. G.I.P. is to be promptly and safely returned to Canada.

It is further **ORDERED** that Petitioner shall submit any motion for costs and fees, accompanied by a final list of his incurred expenses including transportation costs related to the return of G.I.P, within twenty-one (21) days after entry of final judgment. *See* 22 U.S.C. § 9007(b)(3). Any response shall be supported by applicable authority and filed, if at all, within fourteen (14) days of Petitioner's motion.

**IT IS SO ORDERED.**
 **SIGNED this 17th day of January, 2023.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE